**O**

**JS-6**

# United States District Court
# Central District of California

| | |
|---|---|
| BARRY ROSEN,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL "MIKE" MEDLIN DBA AFFORDABLE AUTOGRAPHS, AFFORDABLEAUTOGRAPHSHOLLYWOOD; HOLLYWOOD SHOW, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY; AND DOES 1-10,<br><br>    Defendants. | Case No. 2:15-CV-05789-ODW-JC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [66]** |

## I.   INTRODUCTION

This matter comes before the Court on Plaintiff Barry Rosen's Motion for Default Judgment against Defendant Michael Medlin. (ECF No. 66.) After carefully considering Rosen's moving papers, in addition to the Court's own familiarity with the allegations in this action, the Motion is **GRANTED**.

## II.   FACTUAL BACKGROUND

Barry Rosen is a professional photographer and the copyright holder of the work at issue —two photographs of model Ali Landry. (Rosen Decl. ¶¶ 2– 3, ECF

No. 66-1.) On July 18, 2015, Rosen discovered one of the copyrighted photographs for sale on eBay by the user "affordableautographshollywood." (Rosen Decl. ¶ 12.) Rosen sent eBay a Digital Millennium Copyright Act (DMCA) notice to remove the listing; eBay complied with the demand and informed the seller, Medlin, of the takedown notice. (Rosen Decl. ¶ 8.) On July 20, 2015 Rosen filed his original Complaint against Medlin for copyright infringement. (ECF No. 1.) Medlin was properly served and answered on September 2, 2015. (ECF Nos. 13, 23.)

On September 10, 2015, Rosen filed a First Amended Complaint, alleging that Medlin printed the images of Landry off the Internet, obtained the celebrity's signature, and sold the photographs both on eBay and in person. (First Am. Comp. ("FAC") ¶¶ 2–5, ECF No. 25.) After filing the FAC, Rosen claims he attended a celebrity memorabilia event at the Hollywood Show, where he found and purchased two prints of his Landry photos from Medlin. (Rosen Decl. ¶ 12.) Though served with the FAC, Medlin failed to answer the allegations, and on October 8, 2015, the Clerk entered default against him. (*See* ECF Nos. 31, 33.) However, on October, 14, 2015, Medlin moved to set aside the default, claiming he did not receive the FAC. (ECF No. 36.) In support of his motion, Medlin claimed that he found and printed the Landry photos from Google and that this formed a basis for a meritorious defense. (*Id.* at 6:6–10, 9:20–21.) The Court granted Medlin's motion, giving him 14 days to respond to the FAC. (ECF No. 54.)

Medlin once again failed to file a responsive pleading, and on January 8, 2016, the Clerk again entered his default. (ECF No. 56.) On January 25, 2016, Medlin again moved to set aside the default, claiming that he misunderstood the Court's order. (ECF No. 61.) The Court denied Medlin's motion. (ECF No. 69.) Rosen moved for Default Judgment and this Motion is now before the Court. (ECF No. 66.)

### III. LEGAL STANDARD

Default judgment is governed by Federal Rule of Civil Procedure 55 and allows the court to enter default judgment "[w]hen a party against whom a judgment for

affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). It is within the Court's discretion to enter default judgment following entry of default by the clerk. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986); *see* Fed. R. Civ. P. 55(b)(2). Moreover, in light of Medlin's failure to answer the First Amended Complaint, all of the allegations therein, aside from the amount of damages, are deemed admitted. Fed. R. Civ. P. 8(b)(6); *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

## IV. DISCUSSION

In determining whether an entry of default judgment is appropriate, the Ninth Circuit has identified seven factors for district courts to consider: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel*, 782 F.2d at 1471–72. All of the *Eitel* factors weigh in favor of granting default judgment on Rosen's copyright infringement claim. The Court addresses each factor in turn.

### A. *Eitel* Factors

The first *Eitel* factor considers whether a plaintiff would suffer prejudice if default judgment were not entered. *PepsiCo, Inc. v. Cal. Security Cans*, 238 F. Supp. 2d 1172, 1177. Here, Rosen would suffer prejudice because he would be left without a remedy given Medlin's refusal to actively participate in this litigation or in settlement discussions. *See id.*

The second and third *Eitel* factors—the merits of plaintiff's substantive claim and the sufficiency of the complaint—are often discussed in tandem. *See id.* at 1175. Here, the FAC alleges willful copyright infringement. Specifically, Rosen contends that he is the copyright holder of the Landry photographs and that Medlin willfully violated Rosen's exclusive rights under the Copyright Act by (1) reproducing the

copyrighted work and (2) distributing copies of the copyrighted work to the public by offering them for sale. (FAC ¶¶ 2–5.) To succeed on a copyright infringement claim, a plaintiff must establish (1) ownership of a valid copyright and (2) that the defendant violated at least one of the exclusive rights of the copyright holder. 17 U.S.C. § 106. Moreover, a plaintiff sustains his burden of proving willfulness "by showing [the] defendant knew or should have known it infringed [the plaintiff's] copyright." *UMG Recordings, Inc. v. Disco Azteca Distrib., Inc.*, 446 F. Supp. 2d 1164, 1173 (E.D. Cal. 2006) (quoting *Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522, 1543 (S.D.N.Y. 1991)).

Rosen sufficiently pleads factual allegations to sufficiently state the elements of his claim. As alleged in the FAC, and evidenced by Certificates of Registration from the U.S. Copyright office, Rosen owns the copyright to the Ali Landry photographs at issue. (FAC ¶ 15; Rosen Decl., Ex. 1.) Rosen alleges that he did not grant Medlin permission to copy or distribute the photographs and that Medlin went on to sell prints of the copyrighted work on eBay (under the moniker "affordableautographs hollywood") and at trade shows such as Comic-Con and the Hollywood Show. (FAC ¶¶ 16, 26.) Rosen notes that Medlin continued to sell the copyrighted photos even after he received a DMCA notice from eBay and months after he was served with the original complaint. (Rosen Dec. ¶ 12.) And as previously determined by the Court, Medlin failed to put forward a meritorious defense based on fair use. (*See* Order Denying Mot. to Set Aside Entry of Default 5:19–20, ECF No. 69.) Accordingly, the Court finds that the second and third *Eitel* factors favor granting default judgment.

Next, the Court must consider the amount of money at stake in relation to the seriousness of Medlin's conduct. *Eitel*, 782 F.2d at 1471–72. Here, Rosen seeks an amount that consists of discretionary awards and statutory damages provided under the Copyright Act. *See* 17 U.S.C. §§ 504, 505; *Elekta Ent. Group, Inc. v. Crawford*, 226 F.D.R. 388, 393 (C.D. Cal. 2005). Hisorically, courts have awarded significant damages against a defendant accused of engaging in willful infringement and who

failes or refuses to respond to the compalint against him. *See Phillip Morris U.S.A. Inc. v. Castworld Prods.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003) (awarding damages in the amount of $2,000,000 for willful trademark infringement when defendant failed to participate in the judicial process); *see also Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1060 (N.D. Cal. 2010) (granting large damages and entry of default when defendant engaged in willful copyright infringement and failed to participate in litigation). Given Medlin's willful infringement, combined with his failure to actively participate in this litigation, this factor favors entry of default judgement.

The Court also concludes that the next factor, the possibility of a dispute concerning material facts, favors entry of default judgment. Because Medlin failed to answer the FAC, the facts therein are taken as true. Fed. R. Civ. P. 8(b)(6); *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). Thus, no issues of material fact will preclude entry of default judgment.

The sixth *Eitel* factor considers whether the default was due to excusable neglect. *Eitel*, 782 F.2d at 1472. Medlin was properly served twice in this case, and his two Motions to Set Aside Default indicate that he is clearly aware of the pending litigation. (*See* ECF Nos. 35, 61.) His repeated failure to timely respond coupled with his inadequate justifications makes *excusable* neglect unlikely. (*See* Order Denying Mot. to Set Aside Entry of Default 3:15–16.) Accordingly, this factor favors entry of default judgment.

The final *Eitel* factor examines whether the strong preference that cases be decided on the merits weighs against the entry of default judgment. *Eitel*, 782 F.2d at 1472. However, when a defendant's failure to appear "makes a decision on the merits impractical," entry of default is warranted. *Pepisco*, 238 F. Supp. 2d at 1177. Here, the Court offered Medlin an additional opportunity to defend this suit on the merits by setting aside the original entry of default. (*See* ECF No. 54.) Medlin chose to squander his second chance. Medlin's consistent inability to follow court rules has not only caused significant delay, but has also prohibited Rosen from efficiently

litigating his claim. As a decision on the merits has become increasingly impractical due to Medlin's conduct, the final factor favors an entry of default judgment.

In sum, after reviewing Rosen's Motion in light of the factors articulated in *Eitel*, the Court deems entry of default judgment appropriate. The Court now turns to Rosen's requested relief.

**B.  Remedies**

Rosen requests a permanent injunction, statutory damages in the amount of $100,000 for willful copyright infringement, and attorney's fees. (Mot. 15–19.) The Court addresses each in turn.

### 1.  Permanent Injunction

The Copyright Act authorizes a court to grant temporary or final injunctions to "prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). Generally, a permanent injunction will be granted when liability has been established and a threat of continuing violations exists. *MAI Sys. Corp. v. Peak Computer*, 991 F.2d 511, 520 (9th Cir. 1993).

Here, liability has been established with the entry of default. Medlin's conduct since litigation commenced, specifically his continued sale of Rosen's copyrighted photos, signals a threat of future violations. Thus, an injunction here is appropriate.

### 2.  Statutory Damages

Rosen requests $100,000 in statutory damages for willful copyright infringement, noting that in willful infringement cases, courts often award multipliers of three (or more) times the unpaid licensing fees as statutory damages. (Mot. 16:20–22) (citing *Odnil Music, Ltd. v. Katharsis LLC*, S-05-0545 WBS JFM, 2006 WL 2545869, *8 (E.D. Cal. July 21, 2006); *Fermanta Int'l Melodies, Inc. v. Champions Golf Club, Inc.*, 712 F. Supp. 1257, 1264 (S.D. Tex. 1989). Rosen argues that he routinely receives between $5,000 and $10,000 for a single use, editorial license for his photographs and adds that Medlin would have paid $20,000 for proper licenses to use both Landry photographs. (Mot. 17:9–11; Rosen Decl. ¶ 21.) He asks the Court

to apply a multiplier of five for willful misconduct (5 x $20,000) damages. (Mot. 17:13.) Rosen argues that this amount falls within the applicable range for willful infringement and should deter future misconduct by Medlin. (Mot. 17:13–16.)

The Copyright Act allows a copyright owner to elect to recover an award of statutory damages in lieu of actual damages any time before final judgment is rendered. 17 U.S.C. § 504(c)(1). The Act allows for statutory damages in a sum not less than $750 or more than $30,000 for all infringements with respect to any one work. *Id.* Furthermore, "[i]n a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." *Id.* § 504(c)(2).

Although Rosen suggests a multiple of five would be appropriate, the Court is guided by "what is just in the particular case, considering the nature of the copyright, the circumstances of the infringement and the like." *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990). The circumstances of this case simply do not warrant an award of $100,000. Medlin found the two Landry images on Google, obtained the celebrity's signature, and sold the prints for roughly $30 dollars. (Mot. to Set Aside Entry of Default 6:6–10, ECF No. 36; Rosen Decl., Ex. 2.) Medlin was put on notice of his infringing conduct through the DMCA takedown notice, however he subsequently sold two of the copyrighted images at trade shows. While not taking lightly the seriousness of Medlin's conduct, the circumstances of this case mimic similar copyright lawsuits brought by Rosen in this District. *See, e.g.*, *Rosen v. Global Net Access*, No. CV 10–2721–DMG (E), 2014 WL 2803752 (C.D. Cal. Jan. 16, 2015) (awarding $45,000 for nine photographs); *Rosen v. Netfronts, Inc.*, No. CV 12–658 CAS (FFMx), 2013 WL 3467205 (C.D. Cal. July 9, 2013) (awarding $800 for four photographs). Factoring in the willfulness of Medlin's conduct, the Court concludes that an award of $7,500 per photograph sufficiently compensates Rosen,

while also demonstrating to Medlin that it "costs less to obey" the Copyright Act than to violate it. *Odnil Music Ltd.*, 2006 WL 2545869, at *7.

### 3. Attorney's Fees

Rosen also requests an award of attorney's fees. Under the Copyright Act, a court may award costs and a reasonable attorney's fee to the prevailing party. 17 U.S.C. § 505. The Ninth Circuit has identified five non-exclusive factors that a court may consider in deciding whether to award attorney's fees under section 505: (1) the degree of success obtained; (2) frivolousness; (3) motivation; (4) objective unreasonableness; and (5) the need to advance considerations of compensation and deterrence. *Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1432 (9th Cir. 1996); *Smith v. Jackson*, 84 F.3d 1213, 1221 (9th Cir. 1996).

The factors favor awarding attorney's fees in this case. The foregoing analysis indicates that Rosen was successful on the merits and that his claim was not frivolous. Rosen adds that attorney's fees would be appropriate not only because of Medlin's willful conduct, but also because many of the motions filed in this lawsuit could have been avoided if Medlin actively participated in this litigation or engaged in settlement discussions. (Mot. 18:19–21.) Indeed, Medlin's consistent inability to follow court rules, with no credible explanation for his conduct, resulted in a waste of judicial resources. *See Sun World, Inc. v. Lizarazu Olivarria*, 144 F.R.D. 384, 390 (E.D. Cal. 1992). The Court also agrees that an award of attorney's fees against Medlin serves as a further reminder against engaging in willful misconduct. *See Magnuson*, 85 F.3d at 1432 (noting that in considering attorney's fees under section 505, a district court should "seek to promote the Copyright Act's objectives") (quoting *Historical Research v. Cabral*, 80 F.3d 377, 378–79 (9th Cir. 1996)). Accordingly, the Court awards Rosen $13,130.00 in attorney's fees and $485.00 in costs.

## V. CONCLUSION

For the reasons discussed above, the Court hereby **GRANTS** Rosen's Motion for Default Judgment (ECF No. 66). The Court awards a permanent injunction, $15,000 in statutory damages, $13,130.00 in attorney's fees and $485.00 in costs.

**IT IS SO ORDERED.**

April 27, 2016

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**